

**UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION**

|  |  |  |
|---|---|---|
| SYLVIA KIRSCHENMAN and LEO KIRSCHENMAN, | ) ) ) | Civ. No. 09- 4190 |
| Plaintiff, | ) ) ) |  |
| vs. | ) ) ) | **COMPLAINT** |
| AUTO-OWNERS INSURANCE, | ) ) | **(JURY TRIAL DEMANDED)** |
| Defendant. | ) ) ) |  |

COMES NOW the Plaintiffs and for their Complaint, state and allege as follows:

1.    Plaintiffs, Sylvia Kirschenman and Leo Kirschenman, (hereafter referred to as "Plaintiffs") are residence of Yankton, South Dakota.

2.    Defendant is a company with its principal place of business in Lansing, Michigan.

3.    Plaintiffs purchased a policy of homeowners insurance from Defendant.

4.    In April, 2007, Plaintiffs completed construction of a new roof covering for their home, including structural repairs, and completely new shingles.

5.    Approximately two weeks later, a tornado with large hail and heavy rains severely damaged the roof on their home and caused substantial water damage to the interior of the home.

6.    Plaintiffs' policy of insurance provides for the replacement cost of any such damages.

7.    It cost Plaintiffs approximately $10,000.00 to repair the damage to their roof, resulting from this storm.

-1-

8.      Defendant refused to pay the full replacement cost and instead paid $6,409.80.

9.      The insurance company performed no investigation of water damage to the interior of the home or to water damage to the inside walls.

10.     Several months after the storm, Plaintiffs discovered that ceiling panels were sagging, and discovered mold growing in the insulation and roof joists throughout the home.

11.     Plaintiffs submitted this information to the Defendant.

12.     Defendant obtained estimates of approximately $6,445.52 to repair the interior damage.  However, that estimate included only the replacement of trim boards, painting, wallpapering, and restapling ceiling panels.   The estimate did not include removal and replacement of moldy materials or rotten materials.

13.     The Defendant then offered to pay the amount of its estimate, but only on the condition that the Plaintiffs sign a release of all further claims.

14.     The Plaintiffs obtained estimates from contractors that greatly exceeded the estimates presented by the insurance company, and Plaintiffs' contractors stated that they would not know the full extent of necessary repairs until the work was well under way, because they could not determine the full extent of the mold damage by simply looking at the exterior surfaces inside the home.

15.     Plaintiffs refused to sign a release of all further claims, as demanded by the insurance company, because they did not believe the $6,445.52 offered by the insurance company would be sufficient to complete the repairs, and because the insurance policy promises full replacement costs.

16.     The company later offered to increase its payment to $8,602.78, but again,

-2-

conditioned this payment on the Plaintiffs agreeing to sign a release and close out any further claims.

17.     Plaintiffs again refused to sign a release and waiver of further claims, because they could not determine with any certainty what the full cost would be until the full extent of the mold and rotting materials were fully inspected.

18.     Plaintiff, Sylvia Kirschenman is 85 years old, and suffers from a pulmonary condition called Sarcoidosis, and exposure to mold and fungus can worsen the respiratory symptoms in a patient with Sarcoidosis.

19.     Sylvia Kirschenman experienced worsening of her respiratory difficulties after mold began to appear throughout her house, and made the decision that she would have to remove the mold from her home without delay.

20.     The removal and repair of the mold and other water damages cost Plaintiffs approximately $20,000.00.

21.     The Plaintiffs are both retired, and live on their savings along with a small fixed income.

22.     In order to pay for the repairs, Sylvia Kirschenman cashed in Government Bonds before their due date, which provided her with the $20,000.00 needed to complete the repairs, but which created very substantial penalties and lost revenues in the form of the interest that would have been due upon maturity.

## COUNT ONE - BREACH OF CONTRACT

23.     Defendant's policy of insurance promises to pay replacement costs.

24.     Defendant refused to honor that promise, and instead, insisted on making payment

based only on "estimates" made prior to completion of the actual work, and then would only

issue payment on condition that the Kirschenmans give up their rights under the contract to

receive any further required costs of replacement.

25. Defendant has breached the contract of insurance.

## COUNT TWO - BAD FAITH

26 Defendant has denied and delayed payment of monies due Plaintiffs under their

policy of insurance.

27. Defendant knows, or with reasonable investigation, would know, that there is no

reasonable basis to withhold monies due the Plaintiffs.

28. Even if Defendant had a reasonable basis to dispute a portion of the monies owed

to the Plaintiffs, that would not justify withholding all of the Plaintiffs' money until such time as

they signed the release.

29. Defendant has acted in bad faith by withholding undisputed amounts owing to the

Plaintiffs and conditioning payment of those amounts on Plaintiffs' agreement to present no

further claims.

30. Defendant has acted in bad faith by failing to conduct a reasonable investigation,

and by failing to pay a reasonable amount.

## COUNT THREE - UNFAIR TRADE PRACTICES

31. Defendants have misrepresented the benefits available under a policy of insurance,

in violation of SDCL 58-33-5.

32. Defendants are responsible for the harm caused to Plaintiffs, as well as costs and

attorney's fees, under SDCL 58-33-46.1.

-4-

## DAMAGES

33.    As a result of Defendant's breach of contract and bad faith, Plaintiffs have been damaged as follows:

a.    They have been deprived of the actual replacement cost of the repairs to their home;

b.    They have been forced to use their own money to effectuate those repairs, and have lost the use of that money, as well as having had to pay penalties for early withdrawal of that money;

c.    They have been subjected to unnecessary stress, anxiety, and worry over losing a large part of their retirement savings, over Sylvia's respiratory condition, over the delay in removing mold from their every day environment, and over the insurance company's refusal and delays in fixing their home.

d.    They have now expended time and resources in obtaining legal help.

## PUNITIVE DAMAGES

34.    Defendant has acted with oppression, fraud, or malice, and punitive damages are necessary and appropriate in order to punish and deter.

WHEREFORE, Plaintiffs seek damages in the amount of the actual repair and replacement costs, offset by the amount the insurance company originally paid.  Plaintiffs seek further compensatory and punitive damages in an amount to be determined by the jury, as well as

all prejudgment interest, attorneys fees pursuant to SDCL 58-12-3, costs, and disbursements, and

such other amounts as determined just and appropriate under the circumstances.

## TRIAL BY JURY IS DEMANDED

Dated this **23** day of December, 2009.

Mike Abourezk
ABOUREZK LAW FIRM
2020 W. Omaha
Rapid City, SD 57709-9460
Telephone: (605) 342-0097
Facsimile: (605) 342-5170
Mike@abourezk.com
*Attorneys for Plaintiff*

-6-