UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

| | | |
|---|---|---|
| | * | |
| SYLVIA KIRSCHENMAN and LEO | * | Civ. 09-4190 |
| KIRSCHENMAN, | * | |
| | * | |
| Plaintiffs, | * | **DEFENDANT'S BRIEF** |
| -vs- | * | **IN RESPONSE TO PLAINTIFFS'** |
| | * | **FIRST MOTION TO COMPEL** |
| AUTO-OWNERS INSURANCE, | * | |
| | * | |
| Defendant. | * | |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

### Introduction

From reviewing the plaintiffs' cited authority, it is apparent that the plaintiffs' attorneys are used to having to browbeat other insurers and their attorneys into producing relevant discovery.  The cases cited by the plaintiffs throughout their brief largely deal with insurers who, for all practical purposes, thumbed their noses at the discovery requests and responded with boilerplate objections.  The Courts quickly rectified those situations.

As the Court will quickly discern, this case is different.  Once an appropriate protective order was put in place, Auto-Owners made a good faith effort at responding to the plaintiffs' requests.  In point of fact, Auto-Owners has responded to all of the written discovery requests, and thousands of pages of documents have been produced.

No good deed goes unpunished.  The plaintiffs contend that there must be more, and repeatedly accuse Auto-Owners and its counsel of fabricating responses to the requests.

Where there are disputes as to what Auto-Owners produced, the plaintiffs' difficulty is that they are trying to do one of two things: (1) go one step further than the district courts have gone in the past on similar motions to compel; or (2) use conjecture to convince the Court that *there must be more*, because other insurance companies have more.  Auto-Owners resists the plaintiffs' motion to compel, because it has produced the material that should be produced.[1]

### Argument and Authorities

**A.    The plaintiffs have failed to meet and confer in <u>good faith</u> with the defense before filing this motion.**

A motion filed under Fed. R. Civ. P. 37 must include a certification that the movant has *in good faith* conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action.  Notably, while the plaintiffs assert that they made efforts to meet and confer, their communications as to what they

---

[1] Because this a motion to compel, directed at specific aspects of discovery, Auto-Owners fails to see the relevance of the plaintiffs' 16 page recitation of what it perceives to be the "facts."  Suffice to say, the plaintiffs' retelling of the "facts" bears no semblance to the reality of the situation.  But this can be addressed at a later time when the facts are truly at issue.

2

wanted from Auto-Owners were as vague as their original requests. See Plaintiff's Ex. 6.

Their brief, on the other hand, takes the shotgun approach, peppering the pages with comments on what they believe should have been produced.  Perhaps if plaintiffs' counsel had taken the time to discuss with defense counsel the myriad things he saw as potentially responsive to the requests, rather than sending a letter that essentially just said "we want more" under each document request, more meaningful discussions could have taken place.  Or perhaps, armed with a few thousand pages in response to the first round of discovery responses, plaintiffs' counsel could have followed up with a second round of requests, that *specifically requested* some of the things mentioned in the plaintiffs' brief, rather than leaving it to Auto-Owners to guess.

Instead, the plaintiffs' attorney's discussions with with defense counsel never reached the specific items he was seeking.  He claimed that he was "worn out trying to resolve the document discovery issues . . ." Defendant's Ex. 1.  This is a curious claim, considering that, just 9 days after Ex. 1 was mailed, the plaintiffs filed their Motion to Compel, which included nearly 50 pages of briefing and 70 exhibits.  This endeavor certainly seems more tiresome than a phone call to go through the perceived shortcomings.

3

The plaintiffs are now burdening the Court with discussions about things like irrelevant campaigns and bonus trips for insurance agents who sell more policies - things the plaintiffs are bringing up for the first time in their brief. This is not good faith compliance with Fed. R. Civ. P. 37. Despite the plaintiffs' lack of compliance with Rule 37, and without waiving any arguments regarding the plaintiffs' lack of compliance, in the interests of efficiency, Auto-Owners addresses the merits of the plaintiffs' motion in the following sections.

**B.    Request No. 4 - Personnel Files.**

Relying upon a series of speculative assumptions about management strategies and plans of upper level management, together with inapposite authority, the plaintiffs seek the production of personnel files of individuals who had zero involvement with the plaintiffs' claim.  Aside from the personnel files of those who actually handled the plaintiffs' claim, they seek the production of personnel files of "persons in the chain of command above these individuals up to the head of the claims department," without so much as identifying the *names* of the persons whose files they seek.  See Plaintiffs' Ex. 6.

Auto-Owners produced the personnel files of C.J. Bren and Curt Lundberg, i.e. the claims handler and his supervisor. Plaintiff's Ex. 8; Bayless Aff. ¶ 5.  Auto-Owners cannot guess at what other personnel files the plaintiffs want.  Perhaps a more

4

effective way of going about it would be for the plaintiffs to depose the two individuals whose personnel files were produced to find out if anyone above them ever even had involvement with this claim.  To the best of Auto-Owners' knowledge, there was no involvement further up the chain than Curt Lundberg.  Bayless Aff. ¶ 7.

The plaintiffs rely upon Orders entered in the District of South Dakota pertaining to personnel files.  But the plaintiffs neglect to advise the Court that the document requests in those cases did not extend to unnamed individuals further up the chain of command who were not involved with the individual claims.

An examination of the plaintiffs' cited authority shows that, in this case, the plaintiffs have broadened their request. In Lyon v. Bankers Life and Casualty, CIV. 09-5070-JLV, 2011 WL 124629 (D.S.D. Jan. 14, 2011), Judge Viken was considering a considerably narrower request (from the same counsel as here): "Copies of any employment files of each person who handled, supervised, audited and/or reviewed Plaintiff's claim."  Id. at *8.  Notably, Judge Viken did not discuss the production of unnamed, upper-level personnel files from individuals unfamiliar with Lyon's claim.

In Lyon, the Court cited to two of the other district court cases cited by the plaintiffs.  But, in those cases, the

Court's Order was confined to the production of personnel files for people actually involved with the claim.  Id. (citing Swigart v. Progressive Classic Insurance Company, CIV. 04-5059, 2005 WL 1378754 at *1 (D.S.D. April 29, 2005) ("6. The personnel files for each employee, manager, supervisor, or other agent of Progressive who was involved in plaintiff's claim...."); McElgunn v. Cuna Mutual Group, et al, CIV. 06-5061 (Docket 84) (D.S.D. 2007) ("2. Plaintiff has asked for the personnel files of employees who handled her claim.... This request ... is granted subject to the following limitations: first, plaintiff must sign a protective order, and secondly, it is limited to the unredacted personnel files of [named employees] and the immediate supervisor of each person.").

Defense counsel's firm has also litigated this issue, and the result was consistent with what has been ordered in the Western Division, namely, the production of personnel files of folks who were actually involved with the claim.  In DeKnikker v. General Casualty, et al., 2008 WL 1848144 (D.S.D. 2008), United States Magistrate Judge Simko cited to a decision from the Eastern District of Pennsylvania, which he found to contain a "thoughtful and persuasive analysis":

> Limiting discovery to the practices applied to the
> individual plaintiff is the preferable approach, as the
> issue in a bad faith case is whether the insurer acted
> recklessly or with ill will towards the plaintiff in a
> particular case, not whether the defendants' business
> practices were generally reasonable. That is because

> what constitutes a reasonable set of business practices
> for the investigation and evaluation of claims is a
> question properly left to the Pennsylvania Insurance
> Commissioner, not a judge or a jury. . . . By limiting
> discovery to those practices employed in handling
> plaintiff's claim, the Court can ensure that the
> litigation remains focused on the problems the bad
> faith statute intended to redress.

Id. at *2 (citing Santer v. Teachers Ins. and Annuity Assoc., 2008 WL 755774, *3 (E.D. Pa. March 19, 2008)).[2]

Based on that reasoning, Judge Simko refused to order the production of personnel files of individuals who were not involved in the "decisions and actions taken regarding plaintiff's claim."  Defendant's Ex. 1, at pages 4-5.

The plaintiffs have made no representation in their brief that anyone other than Bren and Lundberg had involvement with their claim.  Instead, they pontificate about the role of upper level management in an insurance company, based on what another insurance company did in another case.  See Plaintiff's Brief, pp. 17-19.

Unlike the insurers in the cases cited by the plaintiffs, Auto-Owners has produced the personnel files of the individuals involved with the plaintiffs' claims.  In the context of this case, which concerns the actions Auto-Owners took vis-a-vis the plaintiffs, the plaintiffs have not shown that discovery

---

[2] In reality, this analysis should apply to virtually all of the plaintiffs' requests discussed in this Motion, but Auto-Owners has nonetheless attempted to comply with the requests.

of personnel files of unnamed employees having no involvement with the plaintiffs' claims is "reasonably calculated to lead to the discovery of admissible evidence."  Fed. R. Civ. P. 26(b)(1).

## C.  Requests Nos. 6, 7, 8 - Cost Containment, Profitability, and Loss Ratios.

This is a perfect example of how the plaintiffs' failure to confer has resulted in unnecessary work for both parties and the Court.  Instead of asking the defendants about programs like REACH or Strive for Five (Billion), the plaintiffs simply provided three paragraphs in their purported "meet and confer" letter that essentially said "give us more."  A little more clarity on these issues would have saved everyone from the plaintiffs' four-page discussion of campaigns having virtually nothing to do with property claims.

Auto-Owners represented in Defendant's Supplemental Responses to Plaintiff's First Set of Requests for Production of Documents that it has produced a copy of "all literature and training material kept by Auto-Owners relating to the use of Independent Adjusters."  Plaintiffs' Ex. 5.  Auto-Owners used an independent adjuster with respect to the plaintiffs' claims, so this information seemed most pertinent to the request.

Despite failing to identify anything specific in their attempt at meeting and conferring, Plaintiffs' Ex. 6, the plaintiffs now apparently want to expand the purview of their requests to seek materials unrelated to property claims.  For

8

instance, the REACH ("Rewarding Associates Committed to Hard Work") program was a campaign used in 2007, which was a predecessor to or subpart of the SOS program.  Bayless Aff. ¶ 13. REACH, like CST ("Customer Satisfaction Team"), SOS, and other programs referenced in the plaintiffs' brief, is a general employee-level program having almost nothing to do with property claims.  Id. at .

Perhaps the most laughable aspect of the plaintiffs' inquisition is the citation of the "Strive for Five (Billion)" campaign, as though it was somehow modeled after a Farmers' Insurance program aimed at increasing surplus that also happened to use the word "billion."  Plaintiff's Brief, p. 21.  The Strive for Five (Billion) program came about in 2009, and involves Auto-Owners striving for $5 billion in net written premium.  Bayless Aff. ¶ 14.  It has nothing to do with cost containment or the handling of property claims.  Id.

The plaintiffs concede that Auto-Owners has produced the 2010 SOS ("Simply Outstanding Service") training videos.  It is debatable whether the SOS materials are even responsive to these requests, but Auto-Owners produced the materials in an abundance of caution.

The plaintiffs insist that there must be more.  They claim that Auto-Owners "withheld" the SOS videos for April and July, 2010.  Plaintiff's Brief at p. 22.  Actually, there was no

9

video for April and, thus, nothing to produce.  Bayless Aff. ¶ 15.  In July, 2010, Auto-Owners had a speaker, Joseph A. Michelli, Ph.D., speak at a home office event in lieu of a video.[3]  Bayless Aff. ¶ 16.  Michelli did not speak about property claims; he merely spoke about customer service and being adaptable to change.  <u>Id.</u>  Since Michelli's speech had absolutely nothing to do with property claims, and since it was not disseminated to the branches and was simply a home office event, Auto-Owners did not feel it was reasonably calculated to lead to any discoverable evidence on the plaintiffs' claim.  Nonetheless, Auto-Owners is going to produce a copy of the DVD for the plaintiffs, just in case.  Bayless Aff. ¶ 17.

The remainder of the SOS videos, predating 2010, are not available in the format that was shown to Auto-Owners' employees.  Bayless Aff. ¶ 18.  Auto-Owners only has the entire streaming video from the years prior to 2010 archived, and this would include outtakes, commentary in between outtakes, etc.  It does not have the final video that would have been presented to employees.  <u>Id.</u>

In terms of increasing profitability or reducing loss ratios, an insurer's combined ratio is derived from dividing claims costs by premium collected.  A number more than 100%

---

[3] More information on Joseph Michelli is available on his website: http://www.josephmichelli.com/index.html

10

indicates an insurer is losing money; a number below 100% suggests an insurance company is profitable, because more premiums have been collected than claims paid out.  Bayless Aff. ¶ 19.  Auto-Owners' goal is to achieve a 100% combined ratio. Bayless Aff. ¶ 20.  In other words, it hopes to pay out $1.00 on claims for every $1.00 of premium collected.  Id.

However, as the plaintiffs astutely point out on page 24 of their brief, the only way that this ratio can be controlled is on the *premium* side.  No insurer can control the amount that must be paid for claims.  Indeed, in the very same email that plaintiffs' point to as evidence that company goals dictate the bonuses paid to employees, Auto-Owners' CEO points out that "[t]he challenge we are seeing with our high loss ratio is related to weather losses, workers compensation and reserve strengthening...[a]ll of this is related to serving our customers, which is why we are in business."  Plaintiff's Ex. 51.

Auto-Owners' efforts at increasing profitability are directed at *sales*, not reducing the costs associated with claims. It is the plaintiffs' Request No. 7 that "reflects a fundamental misunderstanding of the company's obligations with respect to claims."

While efforts to reduce costs and increase profits with respect to the handling of property claims may have relevance, this appears to be an area, like many others in the plaintiffs'

11

motion, where the plaintiffs are simply chasing a rainbow.  The cost reduction materials that they are fishing for in SOS and other Auto-Owners' materials are related to things like asking employees to turn out the lights and use email to save money on ink, paper, and toner, and the like.  They have Auto-Owners' materials on the use of independent adjusters, which goes right to the heart of this matter.

**D.    Request No. 9 - Bonus and Award Programs.**

One of the fundamental problems with the plaintiffs' motion is that they repeatedly refuse to acknowledge the documents that Auto-Owners has produced.  Instead, they cite to the same cases, with the hope that the particular requests in those cases will not be closely examined.  However, if the Court examines the plaintiffs' authority, the plaintiffs are again trying to go a step further with this motion to compel than the Courts have gone before.

Auto-Owners has already done what the defendants in the plaintiffs' cited authority refused to do.  Auto-Owners has produced documents related to its Incentive Bonus Plan and gratuitous bonus.  Bayless Aff. ¶ 24; Plaintiffs' Ex. 5 and 10. These are the documents which concern the bonuses that are potentially applicable to the individual who handled the plaintiffs' claims, C.J. Bren, and his supervisor, Curt Lundberg. Bayless Aff. ¶ 25.

12

The plaintiffs' requests seek more than what has been sought or ordered in the past.  For instance, in <u>Lyon</u>, *supra*, the request at issue was "documents that reference bonus programs applicable to any long term care claims department personnel . . ."  <u>Id.</u> at *10.  Likewise, in <u>Swigart</u>, *supra*, documents concerning incentives to claims personnel and managers was the extent of the Court's order; it did not extend to "any other individuals in the chain of command up to the head of the claims department."  In <u>McElgunn</u>, *supra*, the plaintiff asked for "any company bonuses or awards to <u>claim handlers</u>," and that is what the plaintiff got.  In <u>Beyer v. Medico Insurance Group</u>, 2009 WL 736759, *3 (D.S.D. W. Div. 2009), the plaintiff sought "[a]ny and all copies of documents that reference bonus programs for which <u>claims personnel</u> are eligible, from January 1, 2000, to present."

Instead of being satisfied with the truly relevant information that Auto-Owners provided, the plaintiffs once again go far afield.  They cite to trips mentioned in company newsletters and key on the words "agents *and associates*" to infer that these trips are somehow tied to property claims handling.  Far from it.  The "incentive travel plans," mentioned in Plaintiffs' Ex. 42 and Ex. 49, are trips that independent agents are eligible for if they sell Auto-Owners' products in the requisite volume.  Bayless Aff. ¶ 26.  Managers are eligible to go on them so as to build some fellowship with the agents - but

they have to pay to go.  Bayless Aff. ¶ 27.  These types of
documents are not responsive to the plaintiffs' requests, which
is why they were not produced.

Notwithstanding the sermon on pages 28 and 29 of the
plaintiff's brief concerning the role of adjusters, the incentive
bonus plans applicable to C.J. Bren and Curt Lundberg are what
they are.  Auto-Owners has produced the documents it has which
are responsive to this request.  No further production should be
ordered.

**E.    Request No. 10 - Goals, Targets or Objectives.**

In yet another instance, the plaintiffs have received
requested documents, but speculate about what else must be out
there.  Once again, this is <u>not</u> a situation where Auto-Owners has
refused to comply with the request.  Auto-Owners produced the
emails that its CEO sends to its employees every year.  Bayless
Aff. ¶ 29.  These emails contain the goals, targets, or
objectives that need to be met in order for the employees to
receive bonuses.  <u>Id.</u>

The plaintiffs' argue that "many responsive documents
have not been produced," and "Auto-Owners' response is
substantially incomplete."  Plaintiff's Brief, p. 30.
Ironically, to bolster their argument, the plaintiffs cite to
documents reflecting company goals that Auto-Owners has <u>already</u>
<u>produced</u>.  <u>See</u> Plaintiff's Ex. 43, Ex. 51, Ex. 52.  The

14

plaintiffs' brief shows that they are actually quite familiar with the goals set by Auto-Owners.  They cite to company newsletters showing that: Auto-Owners hoped to achieve a combined ratio of 100 per cent, but at least six points lower than the industry average; and Auto-Owners hoped to achieve claims and underwriting expense that is five points lower than the industry. Plaintiff's Brief, p. 25.

The plaintiffs apparently believe Auto-Owners' home office has a file cabinet with a drawer labeled "Goals, Targets, or Objectives" that can be opened and copied.  The types of things the plaintiffs are asking for are likely reprinted in various communications, and it is not surprising that they have seen them more than once.  But the emails from the CEO are the source.

Auto-Owners is well familiar with Fed. R. Civ. P. 26(e), requiring the supplementation of discovery responses.  If further documents discussing goals, targets and objectives are uncovered, they will be produced.  At this point, the plaintiffs have the documents that Auto-Owners knows contain these items.

**F.   Request No. 13 - Training Materials.**

Auto-Owners complied with this request by producing its most recent version of the training manual.  In their so-called effort to "meet and confer," the plaintiffs simply accused Auto-Owners of lying about their training manual, without any further

discussion of the materials that they now feel are responsive, as laid out in detail on pages 33 and 34 of their brief. Plaintiffs' Ex. 6.  Notwithstanding the accusations, past versions of training materials do not exist.  Bayless Aff. ¶ 32. Rather, the training materials maintained by Auto-Owners are reused, updated, and modified each year, so they are constantly changing.  Id.

Auto-Owners does use other materials, but they are licensed materials such as PLRB (Property Loss Research Bureau), NICTA (National Insurance Crime Training Academy), and ISO (Insurance Service Office).  Bayless Aff. ¶ 33.  Auto-Owners retains no intellectual property interest in these materials, save for the limited permissible purpose of having some of them in its library for reference.  Id.  The plaintiffs also mentioned programs such as A.I., CPCU, and Loma in their brief.  These are certificate programs that associates *may* take if they wish. Bayless Aff. ¶ 34.  Auto-Owners will pay the tuition or a monetary award upon completion depending upon the class, but Auto-Owners does not control the curriculum.  Id.  Finally, Auto-Owners does maintain an online library, but the online library consists mostly of forms.  Bayless Aff. ¶ 35.

Now that Auto-Owners has a better handle on what the plaintiffs' desire thanks to the plaintiffs' brief, it is

accumulating additional educational materials and providing them
to defense counsel.  Bayless Aff. ¶ 36.

**G.    Request No. 14 - Company Newsletters.**

        This item was not even brought up in the plaintiffs'
meet and confer letter.  Plaintiff's Ex. 6.  Nonetheless, the
plaintiffs argue that it would not be unduly burdensome for Auto-
Owners to make copies of the monthly newsletters from 2002 to
2007, and offer, for the first time in their brief, to narrow the
request to only apply to the "Memo" newsletter.  Plaintiffs'
Brief, p. 35.

        This argument misses the point.  Auto-Owners complied
with this request by making the archived newsletters available
for inspection.  Plaintiff's Ex. 5.  This is what Fed. R. Civ. P.
34 requires.  <u>See</u> Wright & Miller, Federal Practice & Procedure,
§ 2213, 8B Fed. Prac. & Proc. Civ. § 2213 (3d ed.) ("However the
documents are organized for production, the party who has made
them available for inspection need not itself make copies for the
use of the discovering party.").  The fact that it is
inconvenient for the plaintiffs' attorney to go to Michigan and
copy the newsletters does not change the language of the rule.
Furthermore, it would be incredibly burdensome for Auto-Owners to
make copies of these documents, given the manner in which they
are stored and the sheer volume associated with the request.
Bayless Aff. ¶¶ 39-40.

To reiterate, Auto-Owners has not denied access to these documents.  If plaintiffs want to inspect them, copy them, hire someone to copy them, or access them in any other reasonable fashion, they are welcome to do so.

**H.   Request No. 16 - Speeches and Presentations.**

Auto-Owners produced the SOS videos that it had available.  To its knowledge, the SOS video are the only videos maintained by Auto-Owners that may contain presentations from Executive Officers, claims officers, or in-house legal counsel. Bayless Aff. ¶ 42.

The plaintiffs' argument here, like many other places, is that Auto-Owners and its attorneys must be lying, because insurance companies make all kinds of videos.  <u>See</u> Plaintiffs' Brief, pp. 37-38.  Notwithstanding the accusation, there is no library or database where the types of items sought by this request, including power-point presentations, overheads, slides, etc., made by Executive Officers, claims officers, or in-house legal counsel, are catalogued.  Bayless Aff. ¶ 43.  If more items are uncovered, they will be produced.

**I.   Request Nos. 17 and 18 - Other Litigation and Transcripts.**

Auto-Owners disputes the relevance of other litigation information.  Courts that have denied plaintiffs' broad requests for prior bad faith litigation rely on the fact that each bad

faith case has its own facts, making the relevancy of other bad faith claims doubtful:

> These prior bad faith cases, if any, will necessarily involve totally different facts and circumstances from those present here. Such information not only is highly unlikely to have any relevance to whether or not [defendant] acted in bad faith in the . . .lawsuit but does not even "appear reasonably calculated to lead to the discovery of admissible evidence." See Rule 26 of the Federal Rules of Civil Procedure. Any discovery of this material would properly be characterized as a fishing expedition, causing needless expense and burden to all concerned. Allowing such discovery would also run counter to the important but often neglected Rule 1 of the Federal Rules of Civil Procedure which requires that all rules "shall be construed and administered to secure the just, speedy and inexpensive determination of every action.

North River Ins. Co. v. Greater New York Mut. Ins. Co., 872 F.Supp. 1411, 1412, (E.D.Pa.1995); see also Council Tower Ass'n v. Axis Speciality Ins. Co., 2009 WL 1176280 (E.D.Mo. 2009) (A request for all bad faith claims, regardless of their disposition, is nothing more than a fishing expedition.).

Auto-Owners conducted a search of its database using bad faith indicators, and the search revealed one other South Dakota claim involving a claim for breach of contract, fraud, or bad faith arising out property and casualty claims. Bayless Aff. ¶ 46. The caption and civil filing number of this claim was provided to the plaintiffs. Bayless Aff. ¶ 47.

Auto-Owners also provided the plaintiffs with a listing of 66 weather-related property and casualty claims with a bad faith lawsuit associated with them. Bayless Aff. ¶ 48. Each of

these 66 claims contains the insured's name and a brief description of the loss.  Plaintiffs' Ex. 66.  This listing confirmed what the Courts above recognized: most of the claims are <u>completely different</u> than the plaintiffs' claims.

Where this Court has permitted the discovery of out-of-state conduct, it has required that there be some nexus between the insurer's conduct and the specific harm suffered by the plaintiff.  For instance, in <u>McElqunn v. CUNA Mutual Group</u>, Civ. 06-5061 (Docket 204, p. 11), the Court was considering a specific denial by the insurer related to "time filing" and "20-hour rule" provisions in the relevant insurance policy.  The theory there was that the insurer was using these exclusions to the detriment of many policyholders just like the plaintiff.

There is no similar policy provision as issue here.  This case concerns the adjustment of a storm loss.  The request concerns a very broad category: ". . . all documents that identify litigation involving claims for breach of contract, fraud, or bad faith against the Defendant arising out of property and casualty claims."  As compared to a scenario where two very specific policy provisions were at issue, it hardly seems reasonable to require Auto-Owners to produce additional documentation concerning nationwide claims which fall under the broad category of "property and casualty."

20

With regard to the transcripts, Auto-Owners has no procedure for maintaining transcripts of the testimony of its employees or officers.  Bayless Aff. ¶¶ 50-51.  If an employees does receive a transcript, it is unknown to the company what the employee does with it.  Bayless Aff. ¶ 50.

**J.    Request No. 19 - Other Policyholders' Claims.**

The plaintiffs complain about Auto-Owners' listing of claim numbers because it "does not identify of (sic) the individuals involved that would allow Plaintiff to find out what happened in these claims."  Plaintiff's Brief, p. 43.  Auto-Owners has no intentions of providing the plaintiffs with the names of its policyholders, so they can be harassed by the plaintiffs.[4]  Bayless Aff. ¶ 57.  Judge Young specifically limited his order compelling the production of other claims in the McElgunn (Powell) Order, Doc. 84 (Plaintiff's Ex. 53), by providing that "the company may redact the names and addresses of the persons to which the claims apply."

Auto-Owners produced a listing of 30 claims that turned up in response to a search for weather-related claims in the 57078 zip code with a loss date of May 5, 2007.  Bayless Aff. ¶ 53.  Auto-Owners could not represent that this list was precisely

---

[4] Obviously, the disclosure of the names of Auto-Owners' insureds who elected to bring suit against it in response to Request No. is another matter, as those individuals made the decision to bring suit, which is a matter of public record.

21

accurate.  Bayless Aff. ¶ 54.  Claims are indexed by reference to
the agent who sold the policy.  Because there may be persons who
reside in or own property in South Dakota who purchased insurance
from an out-of-state agent, there are potentially claims that
would not show up in response to this search.  Id.

          The plaintiffs accuse Auto-Owners of lying about its
ability to search for data relative to the 2007 claims.  They
argue here, as in other places, that this is as simple as a
computerized search and downloading data.  The plaintiffs are
flat wrong.  Every piece of electronic data they have received
thusfar was given to them in that format because someone, either
at Auto-Owners or the undersigned's office, scanned it into their
system and made it electronic data for ease of transfer.  The
fact that it can be preserved electronically does not make the
searching or the scanning/copying any easier.  It would be unduly
burdensome for Auto-Owners to review every weather-related claim
in the nation with a loss date of May 5, 2007, in order to
determine which ones resulted from the storm in the Yankton area.
Bayless Aff. ¶¶ 55-56.

**K.    Request No. 20 - Regulatory Complaints.**

          Auto-Owners produced documents relating to the South
Dakota Division of Insurance Complaints regarding property loss
insurance coverage.  Bayless Aff. ¶ 58.  Auto-Owners has 4,500
insurance department complaint summaries from all over the
country.  Bayless Aff. ¶ 59.  These are not limited to property

loss complaints.  Id.  In order to ascertain whether these "involv[ed] Defendant's handling of property loss insurance coverage," Auto-Owners would have to review each of these manually, as they are not electronically sorted by the types of claims to which they relate.  Id.  Auto-Owners objects to this request as being unduly burdensome.  Bayless Aff. ¶ 60.

Also, considering the plaintiffs' failure to narrow the scope of this request, which seeks complaints from all over the nation so long as they involve property loss insurance coverage, Auto-Owners also maintains that this request is not likely to lead to the discovery of relevant evidence.  Id.

## L.   Request Nos. 22-23 - Duty of Good Faith and Unfair Claims Practices.

These requests could not be more vague.  As a consequence, Auto-Owners simply referred to the content of its Claims Handling Guide.  Bayless Aff. ¶ 61.  Aside from those materials, it is unaware of any other items responsive to these requests at this time, but if further documents are found, they will be produced.  Bayless Aff. ¶ 62.

### Conclusion

Auto-Owners has responded in good faith to the plaintiffs' discovery requests, and is even producing additional material now that the plaintiffs have clarified what they feel may be responsive.  Auto-Owners respectfully asks the Court to sustain its objections to those requests that are unduly

burdensome or call for the production of irrelevant materials that are not likely to lead to the discovery of relevant evidence.  The plaintiffs' motion to compel should be denied.

Dated this 28th day of September, 2011.

RICHARDSON, WYLY, WISE, SAUCK
& HIEB, LLP


By     /s/ Zachary W. Peterson
        Attorneys for Defendant

One Court Street
Post Office Box 1030
Aberdeen, SD  57402-1030
Telephone No. 605-225-6310
Facsimile No. 605-225-2743
e-mail: zpeterson@rwwsh.com

## CERTIFICATE OF SERVICE

The undersigned, one of the attorneys for defendant, hereby certifies that on the 28th day of September, 2011, a true and correct copy of **DEFENDANT'S BRIEF IN RESPONSE TO PLAINTIFFS' FIRST MOTION TO COMPEL** was served electronically by the clerk's office on:

Mr. Mike Abourezk (mike@abourezk.com)
Abourezk Law Firm
Post Office Box 9460
Rapid City, SD 57709-9460


        /s/ Zachary W. Peterson

24